James E. DORSEY, Plaintiff-Appellant,

v.

John CHAPMAN, Warden, Thurbert E. Baker, Attorney General of the State of Georgia, Defendants-Appellees.

No. 99-14790.

United States Court of Appeals,

Eleventh Circuit.

Aug. 20, 2001.

Appeal from the United States District Court for the Northern District of Georgia. (No. 98-00032-CV-WCO-2), William C. O'Kelley, Judge.

Before CARNES, COX and NOONAN[*], Circuit Judges.

COX, Circuit Judge:

James E. Dorsey, a Georgia prisoner, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After review and oral argument, we affirm the denial of Dorsey's § 2254 petition.

## I. BACKGROUND

James Dorsey was convicted for the rape, aggravated sodomy, and sexual battery of Wendy Hardee. At Dorsey's trial, Dr. John Connell and Dr. Amelia Alderman testified for the State; their testimony included the following. Wendy Hardee suffers from multiple personality disorder.[1] Wendy Hardee developed her disorder as a result of childhood sexual abuse by her grandfather. When confronted by upsetting situations or memories, her disorder causes her primary or host personality to retreat, allowing one of her several alternate personalities to emerge. One of the alternate personalities, "Little Wendy," has the voice and personality of a five-to-nine-year-old child. Others range in age and temperament, and provide "Big Wendy," the host personality, with a buffer against emotionally disturbing situations: when Hardee dissociates into an alternate personality, Big Wendy loses consciousness. Hardee, in her normal state as Big Wendy, cannot

---

[*]Honorable John T. Noonan, Jr., U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Dr. Connell's primary diagnosis was multiple personality disorder, with a secondary diagnosis of post-traumatic stress disorder and "probably dissociative disorder, not otherwise specified." (R.7-19 Resp. Ex. 16 at 1115.) Dr. Alderman's diagnosis was "dissociative disorder, multiple personality disorder, post-traumatic stress disorder, mixed personality disorder and anemia." (R.6-19 Resp. Ex. 15 at 1061.) In his motion in limine to exclude the testimony of Wendy Hardee "while in a trance-like or hypnotic state" Dorsey asserted "[d]efendant shows that Wendy Hardee is a person of multiple personalities." (R.8-19 Resp. Ex. 21 at 2217.)

recall events that transpire during these episodes.

The State's evidence also showed the following. In Hardee's junior year of high school she began seeing her high school counselors about the emotional problems she had been experiencing. Although at first her sessions involved several counselors, she soon began to meet with one of them alone. This counselor was Marilyn Dorsey, James Dorsey's wife. Soon she was babysitting the Dorsey children, often spending the night at the Dorsey home after James and Marilyn returned home from an evening out. Following her graduation from high school, Hardee moved in with the Dorseys, and when they relocated to a new town, she moved with them. Hardee remained with the Dorseys for approximately five years.

Eventually Hardee began seeing psychiatrists about what she felt was a worsening condition, and her therapeutic meetings brought revelations concerning the sexual nature of her relationship with the Dorseys. As the Georgia Court of Appeals noted,

> [i]n her sessions with psychologists and psychiatrists, [Hardee] as Little Wendy described how Mrs. Dorsey (whom Little Wendy called "Mommy") would talk about [Hardee's sexually abusive grandfather, "Pawpaw"] and tell her that Pawpaw was coming to get her but that he would stay away as long as she was engaging in various forms of sexual activity with Mrs. Dorsey.... At some point [James] Dorsey ("Papa" to Little Wendy) joined the activities occurring at home, engaging in oral, vaginal and anal sex with the victim.

*Dorsey v. State,* 206 Ga.App. 709, 426 S.E.2d 224, 226 (1992).

Marilyn and James Dorsey were indicted and tried separately. Prior to his trial, James Dorsey (hereinafter "Dorsey") moved to exclude testimony from Wendy Hardee given while in a dissociative state as a violation of his "rights to a fair trial, to equal protection of laws and due process of law."[2] (R.8-19 Resp. Ex. 21 at 2218). The motion was denied. Dorsey testified at his own trial and admitted to having sexual relations with Hardee, but claimed the relations were consensual. The prosecution argued that Hardee's dissociative disorder rendered her incapable of intelligently consenting to the sexual activity. At trial the State elicited testimony describing the sexual activity from two of the victim's several alternate personalities, "Little Wendy" and "Trouble." In order to bring out the alternate personalities, the prosecution asked Hardee, testifying in her normal state as the host personality "Big Wendy," to recount upsetting episodes from her youth; these recollections caused Hardee to dissociate. Dorsey's counsel objected to the testimony of the alternate personalities, and chose not to cross-examine Hardee in her dissociative state. Dorsey was found

---

[2]As more fully discussed below, Dorsey now argues that Hardee's dissociative testimony was in violation of the Due Process Clause and the Confrontation Clause. His motion in limine, however, asserted a due process claim, but not a Confrontation Clause claim.

guilty of all counts and was sentenced to twenty years imprisonment.

The Georgia Court of Appeals affirmed Dorsey's conviction, *Dorsey,* 426 S.E.2d at 230, and the Georgia Supreme Court denied his petition for a writ of certiorari. *Id.* at 224. Dorsey filed a petition for a writ of habeas corpus in the Superior Court of Dodge County, Georgia. Following an evidentiary hearing, the state habeas court denied Dorsey's petition, and the Georgia Supreme Court denied his subsequent application for a certificate of probable cause to appeal the denial of his petition.

Dorsey next sought post-conviction relief in federal court, filing a pro se petition for habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Georgia. A magistrate judge recommended that the petition be denied, and the district court, adopting the magistrate judge's report and recommendation, denied the petition. Dorsey filed a motion to proceed in forma pauperis on appeal and for a certificate of appealability, raising all of the issues he had raised in the district court. The district court granted a certificate of appealability on the following issues: (1) whether Dorsey received ineffective assistance of counsel in violation of the Sixth Amendment due to his trial counsel's failure to impeach Hardee with prior inconsistent statements, failure to cross-examine Hardee while in a dissociative state, failure to object to various statements by the prosecution's experts relating to Hardee's and her alter personalities' credibility, and failure to call an expert witness for the defense; (2) whether admission of the victim's testimony while in a dissociative state violated the Confrontation Clause and rendered the trial fundamentally unfair in violation of the Due Process Clause; and (3) whether Dorsey was entitled to supplement the state habeas record.[3] Dorsey was appointed counsel for purposes of this appeal.

## II. STANDARD OF REVIEW

We review de novo a district court's denial of habeas corpus relief. *Byrd v. Hasty,* 142 F.3d 1395, 1396 (11th Cir.1998). A district court's factual findings in a habeas corpus proceeding are reviewed for clear error. *Id.*

## III. DISCUSSION

A.    Ineffective Assistance of Counsel

Dorsey raises three related ineffective-assistance-of-counsel claims. As noted above, Dorsey argues

---

[3]To the extent that Dorsey raises issues in his briefs not included in the district court's certificate of appealability, we decline to address them. *See Murray v. United States,* 145 F.3d 1249, 1250 (11th Cir.1998). To the extent that Dorsey's inclusion of these issues is a renewal of his earlier motion to expand the certificate of appealability, the motion is denied. Also, Dorsey's motion to supplement the brief is denied.

that he received ineffective assistance of trial counsel due to counsel's failure to impeach Hardee with prior inconsistent statements, failure to cross-examine Hardee while in a dissociative state, and failure to object to various statements made by the prosecution's experts relating to the victim's and her alternate personalities' credibility. Dorsey also argues that his counsel's failure to call an expert witness, a Dr. Kuglar, constituted ineffective assistance of counsel.

To prevail on an ineffective-assistance-of-counsel claim, Dorsey must show that his counsel rendered deficient performance and that he was prejudiced such that there is a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Dorsey's first two claims of ineffective assistance of counsel concern his counsel's treatment of Hardee while in a dissociative state. Dorsey argues that three prior inconsistent statements should have been introduced to impeach the testimony of the alternate personalities; however, as the district court noted, two of these statements were in fact used in the impeachment of the host personality. Furthermore, as a part of his decision to not cross-examine Hardee while she was in a dissociative state, Dorsey's trial counsel's decision to not impeach the alternate personalities with prior statements was based on a strategic refusal to participate in the trial court's decision to allow the dissociative testimony. This trial tactic[4] was intended to impress upon the jury the untrustworthiness of the dissociative testimony while preserving Dorsey's objection to the testimony of the alternate personalities for purposes of direct appeal.[5] We agree with the district court that, given the unusual nature of the case, counsel's decision to challenge the credibility of the alternate personalities' testimony by objecting to the validity of the proceeding and refusing to cross-examine was not patently unreasonable. *See Kelly v. United States,* 820 F.2d 1173, 1176 (11th Cir.1987). Thus, the state court's determination that these decisions did not result in Dorsey receiving ineffective assistance of counsel was neither contrary to, nor an

---

[4]The state habeas court's determination that counsel's decision not to cross-examine Hardee while in a dissociative state was a tactical decision is a question of fact, and is accorded a presumption of correctness under § 2254(e)(1). *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir.1991). Because Dorsey has not presented clear and convincing evidence to rebut the state court's finding, we presume it to be correct. *Id.*

[5]Cross-examination probably would not have technically affected Dorsey's ability to argue that admission of the testimony was error on appeal, as Georgia law provides that cross-examination does not constitute waiver of an objection to admissibility. *See* O.C.G.A. § 24-9-70. But we can not say that cross examination would not have weakened the argument on appeal. *See Fabe v. Floyd,* 199 Ga.App. 322, 405 S.E.2d 265, 274 (1991) (noting that attorney cannot engage in conduct or trial procedure and complain on appeal).

unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1), (2).

Dorsey also contends that his trial counsel was ineffective for failing to object to various statements made by the State's expert witnesses which he claims improperly bolstered Hardee's credibility. We agree with the district court that two of these statements do not rise to the level of bolstering Hardee's credibility.[6] The third statement by the prosecution's expert was elicited by Dorsey's counsel on cross-examination, and was a negative response to a question asking whether one of Hardee's alternate personalities could tell a lie. While expert testimony bolstering the credibility of a witness is improper, *see Snowden v. Singletary,* 135 F.3d 732, 737 (11th Cir.1998), Dorsey has failed to show a reasonable probability exists that but for his trial counsel's error, the result of the proceeding would have been different. Defense counsel's subsequent use of the statement to discredit the State's expert witness, coupled with other evidence supporting Hardee's testimony that Dorsey had knowledge of her condition and exploited it, countermands a conclusion that Dorsey was prejudiced in the manner that the *Strickland* standard requires. *See Parker v. Head,* 244 F.3d 831, 840 (11th Cir.2001).

Dorsey's final ineffective assistance claim, concerning his counsel's failure to call Dr. Kugler as an expert witness for the defense, also fails. Dorsey's trial counsel testified at the state evidentiary hearing that Dorsey participated in the decision to not call Dr. Kugler, a fact that Dorsey now disputes. Whether this is the case or not, his trial counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen this strategy. *Kelly,* 820 F.2d at 1176.

B.      Violation of Confrontation and Due Process Clauses

In supplemental briefing to this court, the state asserts for the first time that Dorsey's Confrontation Clause and Due Process Clause claims have not been exhausted. However, in its answer to Dorsey's petition, the state expressly declined to raise this defense, in the apparent belief that Dorsey's constitutional claims were raised on direct appeal from his state conviction. (R.2-19 at 5.) Although it would appear from a review of the record that Dorsey did not present these claims either on direct appeal or in his state habeas petition[7]

---

[6]The other two statements Dorsey cites are Dr. Connell's testimony that Hardee was not fabricating her multiple personality disorder and his statement that Hardee had been abused. Neither of these statements inappropriately bolstered Hardee's credibility. The former statement was within the witness's area of expertise, and the latter statement did not indicate that Dorsey was the person that had abused her, but concerned Hardee's relationship with her grandfather.

[7]On direct appeal from his state conviction, Dorsey argued that admission of the Hardee's testimony delivered in a dissociative state was in contravention of Georgia statutory law concerning competency of witnesses, *see* O.C.G.A. § 25-9-5(a), as well as Georgia case law concerning the admissibility of

and his claims are therefore unexhausted,[8] the state's explicit waiver of this defense before the district court forecloses it being asserted here. *See Pennington v. Spears,* 779 F.2d 1505, 1506 (11th Cir.1986); 28 U.S.C. § 2254(b)(3). It bears noting that as a result of these procedural developments, no Georgia court other than the trial court has been presented with Dorsey's argument that admission of Hardee's dissociative testimony violates the Confrontation and Due Process Clauses of the federal Constitution.[9] We turn now to an exposition of Dorsey's argument and an analysis of the trial court proceedings.

Dorsey contends that the introduction of testimony by Hardee's alternate personalities constituted a violation of his Sixth Amendment right of confrontation. Dorsey argues that the two alternate personalities summoned during trial could not provide an accurate and complete account of the sexual encounters between Dorsey and Hardee, and that the prosecutor was either unable or unwilling to produce other personalities. In Dorsey's view, the inaccurate and incomplete nature of the dissociative testimony is a necessary consequence of Hardee's disorder, which restricts each alternate personality to a unique set of memories. Dorsey argues that because these unique recollections and perspectives are cabined within the memory of specific personalities and not accessible by other alters or by the host personality, the opportunity to cross-examine one or two of Hardee's ten alternate and seven fragmentary personalities does not provide a full and fair opportunity to test Wendy Hardee's credibility and veracity. *See California v. Green,* 399 U.S.

---

testimony delivered under hypnosis. *See, e.g., Emmett v. State,* 232 Ga. 110, 205 S.E.2d 231, 235 (1974), (holding that "the reliability of hypnosis has not been established and statements made while [a] witness [is] in a trance are inadmissible."). (R.8-19 Resp. Ex. 21 at 2151.) Similarly, in the area of Dorsey's state habeas petition that discusses Hardee's dissociative testimony, Dorsey argues that his counsel was ineffective because he failed to "request the court to invoke the existing Georgia case law relative to pretrial hypnosis of a witness ." (R.4-13 at 28.) These arguments were insufficient to apprise the state court of Dorsey's federal habeas argument, that admission of Hardee's dissociative testimony violated the Confrontation and Due Process Clauses of the federal Constitution.

[8]We also note that the appropriate defense for the State, if it had been raised before the district court, would have been procedural default, not exhaustion. In Georgia, a habeas petitioner who fails to raise an issue that could have been raised on direct appeal defaults the issue unless the petitioner can show cause and prejudice, or show that a denial of habeas relief would result in "a miscarriage of justice," *Head v. Carr,* 273 Ga. 613, 544 S.E.2d 409, 412 (Ga.2001) (citing O.C.G.A. § 9-14-48(d)). Therefore Dorsey's Confrontation and Due Process Clause claims are probably procedurally defaulted. "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we ... treat those claims now barred by state law as [procedurally defaulted with] no basis for federal habeas relief." *Snowden v. Singletary,* 135 F.3d 732, 736 (11th Cir.1998) (citing *Harris v. Reed,* 489 U.S. 255, 269, 109 S.Ct. 1038, 1046-47, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring)). Because of the State's explicit waiver of exhaustion in the district court, we do not reach this issue.

[9]As noted previously, Dorsey's due process argument was presented in his motion in limine to exclude Hardee's dissociative testimony. Dorsey's colorable Confrontation Clause argument was made at trial by his objection to the testimony as a violation of his "right to cross-examine," discussed below. (R.6-19 Resp. Ex. 14 at 886.)

149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (discussing values furthered by Confrontation Clause).

Dorsey contends that at trial the prosecutor was responsible for inducing Hardee's dissociative state, compounding the problems already inherent in Hardee's dissociative testimony. In Dorsey's view, this allowed the prosecutor to control which personalities testified, and which did not. Dorsey also posits that alternate personalities that did not testify at trial possess knowledge that exculpates him, and argues that the prosecutor's control of the witness rendered the proceeding fundamentally unfair in violation of the Due Process Clause.

The Confrontation Clause of the Sixth Amendment guarantees the reliability of "evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). Cross-examination of a witness testifying against the accused allows the jury to observe the witness's demeanor so that they might assess her credibility and evaluate the truth of her testimony. *Green,* 399 U.S. at 158, 90 S.Ct. at 1935. The Confrontation Clause is satisfied "when the defense is given a full and fair opportunity to probe and expose ... infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer,* 474 U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985). However, the Confrontation Clause only "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 20, 106 S.Ct. at 294 (emphasis in original).

Dorsey's Confrontation Clause claim fails because he cannot show that he was deprived of the opportunity to fully cross-examine Wendy Hardee. In his argument, Dorsey asks us to assume that multiple personality disorder creates, and Hardee possessed, compartmentalized memories that are specific to particular personalities, memories that cannot be accessed by either the host personality or by the other alternate personalities. Granting this, he further asks us to assume the existence of other alternate personalities existing within Wendy Hardee's system of identity, personalities that possessed distinct and perhaps exculpatory memories unknown to the host or other alternate personalities that actually testified. And finally, Dorsey contends that he was not given a full or fair opportunity to summon these alternate personalities for the purpose of cross-examination. However, granting Dorsey his several premises, an examination of the record reveals that Dorsey's ultimate contention is without merit.

At trial, Hardee initially testified in her normal state, that is, as the host personality "Big Wendy,"

and was cross-examined by Dorsey's attorney. (R.5-19 Resp. Ex. 13 at 670-700.) On redirect, Hardee dissociated and became "Little Wendy." (R.5-19 Resp. Ex. 13 at 701-56.) The following morning, the prosecutor's redirect continued, with Hardee having resumed her normal personality. (R.6-19 Resp. Ex. 14 at 761-88.) Hardee dissociated once again, becoming the alternate personality known as "Trouble." (R.6-19 Resp. Ex. 14 at 789-842.) Following the lunch break, Hardee resumed her normal state, and Dorsey's counsel cross-examined her at length. (R.6-19 Resp. Ex. 14 at 844-86.) Dorsey's counsel then declared that because he lacked the ability to summon the alternate personalities, he would be denied the right of cross-examination. (R.6-19 Resp. Ex. 14 at 886.)

After the jury and the witness were removed from the courtroom, the trial court took up the issue of how defense counsel might proceed:

> THE COURT: ...I'm going to afford you the opportunity to question the witness as long as you want and then if you indicate to me that you've gone as far as you think you can go in trying to bring out those personalities, if you choose to make the attempt and you're not successful, then I'm going turn it over to [the prosecutor] to see if he can make them available.....
>
> [DORSEY'S COUNSEL]: I will not participate in any type of action that would cause this witness to dissociate from her normal self as she has been on the stand.
>
> THE COURT: I'm offering you the opportunity. If you decline it then we'll simply move into further questioning by [the State].
>
> [DORSEY'S COUNSEL]: And I will further object to anyone else doing that.
>
> THE COURT: I understand your position.

(R.6-19 Resp. Ex. 14 at 892-93.)

The trial court then instructed the prosecutor to attempt to make alternate personalities available for cross-examination:

> THE COURT: ... [Dorsey's counsel] has declined the opportunity to examine the witness and try to bring her out. Now, once you succeed, if you do, in making another personality available, then ... I expect you to turn her over to him for further cross-examination, and I don't want anything said other than just, "Your witness."

(R.6-19 Resp. Ex. 14 at 894.)

The prosecution then successfully summoned the alternate personality Trouble, and turned the witness over to Dorsey's counsel:

> [DORSEY'S COUNSEL]: Your Honor, I decline to ask this witness anything under the circumstances that she's been placed under a trance ....
>
> THE COURT: The witness is available for cross-examination.
>
> [DORSEY'S COUNSEL]: Under the state of the record I refuse to cross-examine a witness who's been placed thusly before me....

THE COURT: ... is there any other cross-examination you want to conduct?

[DORSEY'S COUNSEL]: Not while she's in a dissociative state, your Honor please, thus produced. (R.6-19 Resp. Ex. 14 at 896.)

Following additional redirect, Dorsey's counsel was once again offered the opportunity to cross-examine Trouble, and once again refused. Hardee then dissociated into the personality Little Wendy, the witness was turned over to Dorsey's counsel for cross-examination, and Dorsey's counsel again refused to cross-examine Hardee while in a dissociative state. (R.6-19 Resp. Ex. 14 at 907-08.)

As is apparent from the record, the trial court gave Dorsey's counsel the opportunity to cross-examine the host personality as well as her alternate personalities. The court offered Dorsey's counsel the option of attempting to summon alternate personalities himself, or of relying on the assistance of the prosecutor. With the exception of cross-examination of the host personality, each of these opportunities was refused.

To make out his Confrontation Clause claim, Dorsey asks us to assume the existence of personalities and testimony that he declined even to attempt to elicit, or to the extent personalities were elicited, to cross-examine, in order to prove that such an undertaking was impossible in the first instance. While it is true that a defendant's right of confrontation is violated when he is prohibited from pursuing areas of cross-examination that may undermine the credibility of the witness, *Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988), here Dorsey was not prohibited from pursuing any line of inquiry,[10] but strategically chose not to. Accordingly, the state court's admission of testimony by Hardee while in a dissociative state was neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (defining independent meanings of "contrary to" and "unreasonable application of" clauses for § 2254(d)).

C.     Supplementation of State Habeas Record

Dorsey also claims that he should be permitted to supplement the state habeas record with a copy of Dr. Kuglar's testimony in support of his ineffective assistance of counsel claim. Dorsey rested his case at the state habeas evidentiary hearing without presenting any evidence concerning the content of what Dr. Kuglar's testimony might have been. Dorsey subsequently requested leave from the state habeas court to

---

[10]For this reason we also reject Dorsey's claim that the prosecutor's control of the witness rendered the proceeding fundamentally unfair in violation of the Due Process Clause.

supplement the record with a transcript of testimony Dr. Kuglar offered in Marilyn Dorsey's habeas proceeding, a request the state court denied.[11] Because Dorsey failed to develop the factual basis of his claim when he had the opportunity in his state habeas proceeding, Dorsey must satisfy the standard of § 2254(e)(2).

Dorsey's claim does not rely on a new rule of constitutional law, nor does it rely on a factual predicate that could not have previously been discovered through the exercise of due diligence, as the material was previously available.[12] Accordingly, Dorsey can not meet the standard of § 2254(e)(2). Dorsey also argues that his actual innocence entitles him to supplement the state habeas record. Dr. Kuglar's testimony, however, could not prove that Dorsey was factually innocent. *See Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (describing factual innocence standard). At best, Dr. Kuglar's testimony would have contradicted the claims of the prosecution's expert witness. This contradiction could not establish that Dorsey was actually innocent of the crimes for which he was convicted. *Id.*

CONCLUSION

For the foregoing reasons, the district court's denial of Dorsey's petition for a writ of habeas corpus is affirmed.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

James Dorsey was prevented "from engaging in otherwise appropriate cross-examination" of the chief witness against him. *Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). That testimony was crucial. The error was not harmless. *Id.* at 232, 109 S.Ct. 480. I would grant the petition for writ of habeas corpus. 28 U.S.C. § 2254(d)(1).

Under oath on the witness stand, the accuser testified vividly about forced sexual encounters with

---

[11]Dorsey argues that the state habeas court erred in denying his request to supplement the state habeas record following close of evidence in the evidentiary hearing. However, federal habeas relief does not include the review of state court application of state procedural rules that do not rise to the level of constitutional violations. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991).

[12]The text of § 2254(e)(2): "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that(A) the claim relies on(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

the defendant.  But the accuser also testified that no sexual relations of any kind whatsoever had taken place between her and the defendant.  Later she testified to having written a letter stating that she had voluntarily engaged in sexual relations with both the defendant and his wife.

The state anticipated that the accuser, Wendy Hardee, would offer such seemingly conflicting testimony.  In his opening statement, the prosecutor prepared the members of the jury for what would come, assuring them that the testimony would be that of a single witness:

> [Hardee] had and has as many as ten personalities.  They have various names, and you may see some of those personalities in the testimony presented to you from Wendy Hardee, one Wendy Hardee, one Wendy Hardee who is nonetheless like a broken mirror who is one person but has many parts.

The prosecutor named the specific alternate personalities he expected Hardee to testify as:  "Big Wendy," "Little Wendy," "Trouble," and "Theresa."

The state offered the testimony of two psychiatric experts to help the jury account for Hardee's difficulties in recalling and relating in a coherent way what had happened.  The first expert, after testifying that Hardee had been admitted to a psychiatric hospital on five separate occasions during the year prior to the indictment, explained in clinical terms that Hardee had been diagnosed with and suffered from a psychiatric dissociative disorder commonly called "multiple personality disorder" (MPD).  The second expert, Hardee's treating psychiatrist, explained that "[t]he primary indicators that would make [Hardee] fit into the category multiple personality disorder would be that she has separate, what we call alters or personality states ... where these parts do not necessarily have any understanding of the other parts of her."  He also testified as to MPD's fracturing effect on memory and elaborated on the prosecutor's "broken mirror" analogy:

> [O]ne thing that's important with a multiple personality disordered person is it's not like they're a whole bunch of little people.  This is one person with a whole series of different memory fragments ....
>
> Just as an example, a kind of an analogy is if you think of a person as a sheet of glass or a mirror.  If you drop that mirror and break it, it breaks up into a lot of little pieces, but it's still one whole mirror.  That's still one mirror you're looking at, even though it has lots of little fragments. And that's really what happens with memory in a person with multiple personality disorder.  All the memory and the whole person is still there, it's just that the fragments aren't together and they're not touching or connected.

He further testified that during his clinical sessions with Hardee "three of her personalities"—"Little Wendy," "Trouble," and "Theresa"—described to him sexual acts that had taken place between her and Dorsey.  He also testified that the alternate personality "Missy" was "very connected with" "the part of Wendy that knows everything, that has full recollection ...."

Hardee's testimony was that four alternate personalities—"Little Wendy," "Trouble," "Theresa," and

"Missy"—were present during her sexual encounters with Dorsey. Hardee testified as her host personality "Big Wendy" and in a dissociative state as "Little Wendy" and as "Trouble." Hardee gave no testimony as "Theresa" or as "Missy."

We are not asked to assume that Hardee had compartmentalized memories, as the majority states. That is the position taken by the prosecution. Similarly, we are not asked to assume the existence of other alternate personalities. Their existence was testified to by an expert for the state. We are not asked to assume the existence of "Theresa" and "Missy," personalities knowledgeable about the sexual encounters. That is Hardee's testimony.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause is intended "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845-46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer,* 474 U.S. 15, 22, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

To "state[ ] a violation of the Confrontation Clause," Dorsey must "show[ ] that he was prohibited from engaging in otherwise appropriate cross-examination ...." *Olden,* 488 U.S. at 231, 109 S.Ct. 480. "Prohibit" means both "to forbid by authority" and "to preclude or prevent, to render impossible." The majority, presuming only the first meaning, concludes that Dorsey was not prohibited from cross-examining his accuser: "the trial court gave Dorsey's counsel the opportunity to cross-examine the host personality as well as her alternate personalities." Because Dorsey refused to cross-examine Hardee while in a dissociative state, Dorsey "was not prohibited from pursuing any line of inquiry, but strategically chose not to."

The majority sidesteps the constitutional inquiry into whether the trial court adequately safeguarded Dorsey's rights secured by the Confrontation Clause. The challenge for the court was to provide Dorsey access for cross-examination to the parts that made up the whole of the witness, so that he would have "a full and fair opportunity to probe and expose [testimonial] infirmities" of Hardee's memory. *Fensterer,* 474 U.S. at 22, 106 S.Ct. 292. The court's solution was to insist that "Little Wendy" and "Trouble" formally be made

available for cross-examination. In fact, the court was prepared to end the trial if Dorsey was not given access to the part of Hardee's memory called "Trouble." As to those two alternate personalities, the court's insistence was a reasonable application of the Confrontation Clause. But Hardee's memory was broken into "ten personalities and seven fragments." The court took no further action to make any other parts available for the accused to cross-examine. The very reasonableness of the court's insistence as to "Little Wendy" and "Trouble" underscores its failure to apply the Confrontation Clause to the other memory fragments of the "broken mirror." The trial court's unreasonable response to Dorsey's objection to Hardee's testimony "precluded," "prevented," and "rendered impossible" a full and fair opportunity to cross-examine Hardee; Dorsey was thereby prohibited from cross-examining her. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("a federal habeas court may grant the writ if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case").

What accounts for the trial court's unreasonable application of the Confrontation Clause? Was it that the court considered "Trouble" and "Little Wendy" to be individual witnesses? That notion runs counter to the argument and testimony offered by the state, and to the court's admission of the state's expert testimony that MPD sufferers are "not ... a whole bunch of little people" but are "one person with a whole series of different memory fragments." Was it that Hardee testified as "Little Wendy" and "Trouble" but not as any other alternate personality? If so, that too is to treat each personality as a separate witness, and Hardee, by the prosecutor's own argument, was "one person but has many parts." And the parts, according to the state's expert, are memory fragments that together constitute the entire memory of the witness. There is no principled way to distinguish what the trial court insisted happen with the "parts" called "Little Wendy" and "Trouble" and what simply did not happen with the other parts of Hardee's memory.

True, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). But the record is clear that "Theresa" and "Missy" had knowledge of the sexual encounters. Under the state's theory of how Hardee's memory was fragmented, those two "parts" held relevant information. That the state chose not to elicit direct testimony from those alternate personalities does not immunize the trial court from the constitutional requirement to make those parts available for cross-examination.

The majority takes comfort in "the option" that the court offered Dorsey "of attempting to summon

alternate personalities himself, or of relying on the assistance of the prosecutor." There is no indication in the record that anyone—prosecutor, defense counsel, trial court, treating psychiatrist, Hardee herself—was capable of summoning Hardee's alternate personalities "Theresa" or "Missy" to the witness stand. On this record, the option amounts to no option at all.

Handing over a broken mirror consisting of fragmented, unconnected parts, without providing a key to how the parts fit together or a map to where the relevant memories are stored, does not satisfy the Confrontation Clause's requirement of "a full and fair opportunity" for cross-examination. To suggest that such an opportunity was possible with this witness is not to take seriously the prosecution's theory of the case and the state's expert testimony about the essential memory-fragmenting feature of MPD. To say that the Confrontation Clause was not violated because Dorsey was unhindered from summoning any and all personalities he wanted does not square with the trial court's reasonable insistence that "Little Wendy" and "Trouble" formally be made available for cross-examination.

It was a travesty of justice for the state of Georgia to convict a man on the testimony of less than one person.